# UNITED STATE DISTRICT COURT
# DISTRIC OF MINNESOTA

| | | |
|---|---|---|
| CHRIS JACKSON, | ) | COURT FILE: _25-cv-2688-KMM/EMB_ |
| TIM DORN, | ) | CASE TYPE: _42 USC §1983_ |
| TIM MOHAWK, | ) | JUDGE: _____ |
| MATHIAS MAYERS, | ) | MAGISTRATE: _____ |
|     PLAINTIFF, | ) | DATE FILED: _JUNE 18, 2025_ |
| V. | ) | |
| | ) | |

> COMPLAINT FOR INJUNCTIVE,
> DECLARATORY, AND COMPENSATORY
> RELIEF, DEMAND FOR JURY TRIAL
>
> 42 USC §1983

MICHELLE SEXE, )
Individual and Official Capacities, )

GARY TALLEFSON, )
Individual and Official Capacities, )

DEPT. OF HUMN. SERV. OF MINN )

    DEFENDANTS. )

## INTRODUCTION

SCANNED

JUN 2 5 2025

U.S. DISTRICT COURT ST. PAUL

1.    To the Honorable, _____, of the United States District Court, District of Minnesota:

2.    Your Plaintiffs, <u>Chris Jackson, Tim Dorn, Tim Mohawk</u>, and Mathew Mayers (hereinafter "Plaintiffs" or by last name individually), respectfully represents that:

3.    He is confined in the Minnesota Sex Offender Program (MSOP) at St. Peter, Minnesota, 56082, of Nicollet County, in the city of St. Peter, Minnesota, called *Community Preparation Services CPS)* by Defendant Department of Human Services (DHS), which is the Entity of the Minnesota Sex Offender Program (MSOP), in who's physical care and custody Plaintiffs are in at the time of the Constitutional violations alleged herein this Complaint.

4.    Plaintiffs were originally confined by virtue of civil commitment under Minnesota Statutes 253B.02, Sub. 18(b) Sexually Psychopathic Person; and/or Minnesota Statutes 253B.02, Sub. 18(c) Sexually Dangerous Person. A copy of the civil commitment order is provided.  [Evidentiary Hearing]

5.    Under and by virtue of which your Plaintiff <u>Chris Jackson, Tim Dorn, Tim Mohawk</u>, were originally civilly committed, and are  entitled to Injunctive,

Declaratory, and Compensatory Relief for Unconstitutional Community Preparation Services (CPS) policy; custom, practice, or procedures under color of State law, by State officials, acting with a malicious, wanton, and oppressive ill-will and intent to do harm to Plaintiffs, disregard for their Civil Rights, for over thirty days now of time and ongoing daily in violation of the United States Constitution, as alleged herein this Complaint.

6.     Entitlement to substantial Compensatory Relief, in the interest of justice, and good faith, is Constitutional as a result of State MSOP Officials' ongoing unconstitutional treatment of Plaintiff in contravention of the First, Eighth, Fifth, and Fourteenth Amendments to the United State Constitution, and the Minnesota Constitution, and Common Laws. The Facts upon which grounds the relief is lawful is stated in brief below.

## FACTUAL ALLEGATION

### DEFENDANTS PERSONALLY INVOLVED:

### (1) MICHELLE SEXE; (2) GARY TALLEFSON;

7.     Paragraph 1 through the last paragraph are incorporated by reference, and it is further alleged: On May 17, 2025, Defendants Sexe and Tallefson asked to meet with Plaintiffs individually in a room. Sexe immediately said, *"You can sign to go inside the secured facility for sixty*

*days voluntarily, or I will revoke your reduction in custody and transfer to CPS and you will go back into the maximum security facility permanently now.*" Plaintiffs signed out of fear and intimidation of return to the secured facility for life!

**8.** Paragraph 1 through the last paragraph are incorporated by reference, and it is further alleged: Asking to send Plaintiffs back inside a maximum security facility ---- for what? The conditions in there are synonymous to ten times worse than the most harsh punishments at CPS. So, asking Plaintiffs to go in there for sixty days was an abuse of power. It was using a state maximum security facility for her own weapon to deter Plaintiff from engaging his *Fifth Amendment* rights to be free from *Self-incrimination* (especially for someone else's misconduct, not his); *First Amendment rights to Freedom of Association and Speech;* and *Fourteenth Amendment* rights (applying the Eighth Amendment as civilly committed persons) to be free from *Cruel and Unusual Punishment.*

**9.** Defendant Sexe is entirely ignorant of Plaintiff's rights. She has no more education than a high school diploma. Yet, she just within days ago

is taking over as top Director of CPS. The first thing she done in that position within one week is harass and target Plaintiffs for no wrongdoing on his part by ordering her subordinates to handcuff Plaintiffs and walk him over to the maximum security facility, and lock him up there indeterminately life! They were strip searched, and had to be searched to come out of the room to use the toilet. That must be rectified by substantial deterrent, in kind. In the interest of just, and good faith Plaintiff seeks Exemplary Damages in this Complaint against Michelle Sexe, that she be terminated from DHS, CPS, State employments with no pension if the jury finds that she violated Plaintiff Civil Rights by an abuse of power, when she ordered that Plaintiffs be locked inside the secured facility. This was using the secured facility as her own convenient person weapon to deter Plaintiff from engaging his First, Fifth, and Fourteenth Amendment rights of the United States Constitution to have peace and be let alone.

10.   There was no legitimate reason for use of a maximum security facility and restraints on Plaintiffs for no stated misconduct, no rule violation, no disrespect to anyone, nothing that put him in league with Clients that were put back inside the secured facility for serious rule

violations like: possession of pornography; relationship with a female staff; repeated/exposing or sexual acting out; threatening others with a knife in one hand; absconding from CPS, etc. None of which behaviors existed or was even alleged against Plaintiffs, that he done by Sexe. Plaintiff's had been at MSOP for 10 plus years each before CPS, and then years at CPS to this day. No record of the behaviors by another Client Sexe's problem was about.

**11.** Instead of addressing the problem she had as a result of her Security Staff who literally counted a Client's GPS Ankle Monitor four times, thinking he was laying in his bed, but was not even in the bed. It was a fake leg, and he absconded. Sexe was substantially punishing, blaming Plaintiffs for her staff's outrageous failure to the point of incompetence. The Client was gone 23 hours, and her Staff were counting him in his bed, physically touching, checking t's GPS Ankle Monitor that was going off, because it needed charging on a fake leg in the bed.

**12.** Sexe and Tallefson called each Plaintiff into a room and threatened him to accept their adverse discharge from CPS and transfer back inside the secured facility for sixty days, or be revoked to the secured facility

permanently. That is enough threat to work on any Client of average firmness, including four Plaintiffs that were taken in the secured facility. Sexe used this unconstitutional process on them like a CPS policy; custom, practice of procedure, who had no choice but to go for it. Plaintiff's signed the voluntary return, but for absolutely no misconduct on their part. No behavior that was not engaging their First and Fifth Amendment rights to Freedom of Speech and Association, fear of informing on someone, and not certain if he was serious, who did the rule violations. Plaintiff's got put back inside by Sexe for life, who lied to them to get them to be forthcoming. The CPS Handbook is void of any "rule" Sexe could say they violated. Yet, they are returned to the maximum security facility. It demonstrates the unconstitutional DHS custom, practice, and procedure being used on Plaintiff.

13. Sexe did the talking. She stated absolutely no misconduct on any Plaintiff's part that rose to a level of security threat to anyone or himself, or serious rule violation to justify use of a maximum security facility, or to be threatened with sixty days inside the secured facility coercion and

duress of permanent discharge from CPS. That is not any fundamentally fair deal. It's absurd! Plaintiffs did absolutely no "misconduct."

14. Plaintiffs allege, are suing Sexe and Tallefson because that threat, they acted on, and did do to Plaintiff, discharged from CPS permanently for Plaintiff Dorn for not volunteering to go inside the secured facility for sixty days violated Plaintiffs Constitutional rights. If Plaintiff was so dangerous he had to go back inside the secured facility, that would not automatically change in sixty days deal. This "deal" was pure intimidation, humiliation, embarrassment, and not any kind of fundamentally fair treatment for no misconduct. The punishment must fit the misconduct. If there is no misconduct, the punishment of going inside a max security facility is *"cruel and unusual punishment,"* in violation of the Eighth Amendment of the United States Constitution. See, *Leslie v. Doyle*, United States Court of Appeal for the Seventh Circuit, Case File 125 F.3d 1132; 1997 U.S. App. LEXIS 26956, No. 95-3130; Sept. 29, 1997, Decided: *"We agree with Leslie that the Eighth Amendment embodies a principle of proportionality. See, Harmelin, 501 U.S. 957, 115 L. Ed. 2d 836, 111 S.Crt. 2680 (1991). . . We also agree with Leslie that the punishment imposed for no offense at all is, as a matter of mathematics,*

*disproportionate.*" However, Leslie came up short, because the Court did not agree that Leslie met the *"shocks-the-conscious"* standard of injury, because the incident only involved 16 days in the segregation unit.

15.　　Plaintiffs alleges that his confinement in the maximum security facility for no misconduct for sixty days, or life, does meet the *"shocks the conscious"* threshold of proof, but Plaintiffs are not required to meet that standard of proof, because it does not apply. Here, see, *Albright v. Oliver*, <u>510 U.S. 266</u>, 272, <u>127 L. Ed. 2d 114</u>, 114 S. Ct. 807 (1994) (quoting *Collins v. Harker Heights*, <u>503 U.S. 115</u>, 125, <u>117 L. Ed. 2d 261</u>, 112 S. Ct. 1061 (1992)), the Court pointed to the Second Circuit's four-factor substantive due process test derived from the ***"shocks the conscience"*** concept as an illustration of ***<u>what should not be used when an enumerated constitutional right is available as a source of protection.</u>*** *See Graham*, 490 U.S. at 392-93. Instead, *"where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" Albright*, 510 U.S. at 273{1999 U.S. App. LEXIS

20} (quoting *Graham*, 490 U.S. at 395).   In various instances since *Graham*, this circuit (mainly in unpublished opinions) has subjected prisoners claiming retaliation in violation of an enumerated constitutional right to a heightened requirement that the retaliatory act *"shock the conscience." See McLaurin v. Cole*, 115 F.3d 408, 411 (6th Cir. 1997). All of these opinions cite *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), for requiring prisoners to make this heightened showing. Yet, reliance on *Cale* for such a proposition is inappropriate and inaccurate. While the Sixth Circuit in *Cale* used an *"egregious abuse of governmental power"* test and noted that the retaliation was in response to Cale's exercise of his First Amendment rights, it clearly explained that the inmate's claim was based on his general {175 F.3d 388} substantive due process rights and not on the First Amendment. *See id.* at 945.   To the extent that prior decisions have imposed the *"shocks the conscience"* test when prisoners claim "retaliation" in violation of an enumerated constitutional right, <u>they are in conflict with the Supreme{1999 U.S. App. LEXIS 21} Court's decisions in Graham and its progeny and are no longer the law of this Circuit.</u>

16.     The *Eighth Amendment* usually does not apply to civilly committed persons, such as Plaintiff Mr. Favors.    However, it does here, because *"Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment."* See, *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (quotation marks and citation omitted); *Revels*, 382 F.3d at 874 (recognizing that Fourteenth Amendment applied to involuntarily committed patient's 1983 claims, but applying Eighth Amendment standards because patient's *"confinement is subject to the same safety and security concerns as that of a prisoner"*).

17.    Additionally,    Sexe's    retaliatory    actions    violated    Plaintiff's Constitutional rights to be free from unnecessary use of confinement in a maximum security facility as a deterrent without a forensic doctors' opinion or involvement, speaking to the Plaintiffs for evaluation, before whatsoever as required in *Youngberg,* by the US Supreme Court.   Entirely because Sexe said so (who has nothing but a high school diploma).  It is alleged that Sex is ignorant of Plaintiff's Constitutional rights, or disregarded them, applying this unconstitutional custom, practice, or

procedure she done to other Clients, like Joseph Favors on June 16, 2025, resulting in extreme harms to Plaintiffs.

18.   Plaintiffs are suing DHS for Unconstitutional (unwritten) policy; custom, practice, and procedures that made Sexe's adverse actions possible and resulted in Sexe's unconstitutional harms to Plaintiffs on May 17, 2025 by locking them in the secured facility for no misconduct.  That is the only way it could be done to Plaintiffs, is with DHS behind it, tacit approval.

19.   To be clear, Sexe did the taking, stated absolutely no misconduct that was behind this extreme adverse action --- to this day (June 17, 2025).   It was retaliation against Plaintiffs for engaging his Fifth Amendment rights to be free from Self-incrimination, would not have occurred "but for," engaging that Constitutional right constitutes *"retaliation."* Plaintiffs did nothing more than engaging his First, and Fifth Amendment rights to "Freedom of Speech" and "Freedom of Association," and Freedom from Self-incrimination, and a madman.  No telling what he's do.  Plaintiff Dorn was returned to the secured facility for life, because he "suspected" the client was up to something.  Sexe did that to him just for

being seen talking to the Peer. Plaintiff Jackson, has not been told anything at all! No paperwork, allegations, COM-LOG nothing exist as of June 18, 2025 back inside the secured facility, languishing amongst the most dangerous sex offender with CPS status. Plaintiff Mohawk was told by Tallefson, *"Just sign the paper and be back to CPS by Monday,"* which was all a lie. He remained in the secured facility as of June 18, 2025, over a month later. Plaintiff Mayers is handicap. He cannot hear/ is deaf pretty much. He has no idea what his status is. He, Jackson, and Mohawk never admitted to even suspecting the other Client was planning to abscond.

**20.** This threat would have intimidated the average CPS Client into accepting return to the secured facility for sixty days for no stated reason at all. Fear of the extreme maximum security conditions (punishment ten times compared to CPS freedoms), and that is why Sexe and Tallefson did it to Plaintiff, and do it to clients like they did to Joseph Favors for no misconduct, rule violation, because he refused to sign the sixty day return to maximum security facility, who have not violated any rules; could not even write a rule violation for any "misconduct" behaviors. If they did, it

would certainly violat the Fifth Amendment of the United States Constitution against Self-incrimination.

21. Sexe and her staff had a personal vendetta with Plaintiffs, they abuse state power by use of the secured facility for sixty days for no rule violation, nothing but a character attack on Plaintiffs.

22. Sexe has no regard or respect for these constitutional rights. It's Sexe's way or the secured facility to deter anyone with independent perspectives, personality, regardless of his doing well in treatment.

23. Plaintiffs have a Common Law right to refuse to participate in CPS treatment what-so-ever, without being punished, or discharged back into the secured facility for any reason related to "treatment participation," accountability, or not. *See,* Minn. Stat. 144.651, Sub. 12, quoted below:

> **Right to refuse care.** Competent patients and residents shall have the right to refuse treatment based on the information required in subdivision 9. Residents who refuse treatment, medication, or dietary restrictions shall be informed of the likely medical or major psychological results of the refusal, with documentation in the individual medical record. In cases where a patient or resident is incapable of understanding the circumstances but has not been adjudicated incompetent, or when legal requirements limit the right to refuse treatment, the conditions and circumstances shall be fully documented by the attending physician in the patient's or resident's medical record.

**24.** Sexe and the DHS's Treatment policy for CPS is in violation of the that State Statute Minn. Stat. 144.651, Sub. 12, by locking Plaintiffs up in the maximum security facility for ANY WHAT-SO-EVER reasons related to *"treatment participation* or *failure"* at CPS. That agency policy violated this state Statutory law. Plaintiff's Bill of Rights as a patient of a medical facility in Minnesota. See, *United State v. Marolf, Court of Appeals of the United State Ninth Circuit,* 173 F.3d 1213; 1999 U.S. App.: *"Internal agency regulations, however, cannot legitimate the violation of constitutional or statutory rights." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 543, 55 L. Ed. 2d 460, 98 S. Ct. 1197 (1978) (administrative agencies free to promulgate own rules absent constitutional constraints or compelling circumstances); *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 606 (Fed. Cir. 1985)(agency rules and regulations must comport with enabling legislation and due process).

**25.** Secondly, although violation of the aforesaid state statutes does not per se violate the United State Constitution. The violation of state statutes by Sexe and DHS creation of their own agency policy as alleged by Plaintiffs here, violated clearly established agency law where it is entirely *"arbitrary and capricious"* agency actions. *See,* 5 U.S.C. 706(2)(A), agency action is

unlawful when it is *"Arbitrary and capricious, an abuse of discretion, **or** otherwise not **in accordance with the laws**."* *See, Moore*, 736 F.2d at 1262 Defining *arbitrary and capricious* as: **(1)** *"There is no rational basis for the [disparate] actions."* **(2)** It is a *"willful and unreasoning action/decision, without consideration and in disregard of the facts or circumstances of the case[.]"* Id. (Quoting, *First Nat"l Bank of Fayetteville,* 508 F.2d 1371, 1376 (8th Cir. 1974).

**26.** These agency law violations do violate the United State Constitution, because it is *"An abuse of state power,"* when used to do the harm to Plaintiffs by locking him inside a maximum security facility for nothing but engaging First Amendment rights against CPS Staff to Freedom of Speech and Freedom of Association and Fifth Amendment freedom from Self-incrimination. Sexe and her staff must know these facts, they did it anyway to Dorn, because it would take a year to win his appeal back inside the secured facility. That is why he is entitled to injunctive relief, the order by Sexe be voided and he remains at CPS until the Appeal is heard (in the interest of justice), and to deter Sexe from continuing to harass and retaliate against Clients for engaging their Constitutional rights.

**27.** Although the United States Constitution does not create a cause of action for the above alleged *"arbitrary and purposeless acts"* by Sexe or DHS agency for instituting *arbitrary and capricious* agency policy in violation of statutory

rights Plaintiff possesses. Meaning it violated Plaintiff's statutory rights to refuse treatment, by drafting an agency policy that says if you do poorly in treatment you will be returned to the secured facility, clearly in violation of the statutory rights to refuse treatment (supra). That drafting of agency policy by DHS in violation of Plaintiff's Statutory rights, and the injury to Plaintiff by locking him inside the secured facility, is an *"an abuse of power,"* which the United States Constitution does prohibit. See, *Burton,* 791 F.2d at 100. Additionally, the Fourteenth Amendment guarantees state law rights will not be so arbitrarily denied, which Constitutional right is invoked here.

**28.** Plaintiffs do not seek damages on behalf of any other person's, or harms done to them, referred to in this Complaint above, other than themselves, and the harms done to them named in the caption as "Plaintiff."

## DAMAGES

**29.** As a result of Defendants Sexe and Tallefson's retaliatory harassing and adverse discharge from CPS unsecured facility, placed Plaintiff permanently for no stated reason in a maximum security facility. Plaintiff is suing Sexe and Tallefson for the following injuries he has suffered, Actual Damages, ongoing daily:

**30.**    (1) Irreversible Mental and Emotional pain and suffering in the formal of stress, anxiety, anger, migraine headaches, intimidation, humiliation;

**31.**    (2) Irreversible unwanted and intrusive, unshakable fear and intimidation. So overwhelming Plaintiff can never return to CPS, because he fears more of the same harassing and retaliatory treatment he endured for over a year for nothing but engaging his constitutional rights about problems there.

**32.**    (3) Irreversible loss of placement at an unsecured treatment facility after being placed there by based on the professional recommendation of six or more licensed forensic doctors (neither Sexe of Tallefson has a doctor's degree) who testified for CPS placement, and which was granted by the Commitment Appeal Panel (CAP) Court (twice), which Court had sole authority to grant CPS reduction in custody and transfer. Sexe and Tallefson removed Plaintiff therefrom on their own harassing and retaliatory actions, because it will take a year to appeal. In the meantime,

Plaintiff remains in the maximum security facility, and that is what Sexe and Tallefson wanted in the least, even if Plaintiff won the appeal.

**33.** Thus, placement at CPS by Sexe and Tallefson, and their subordinate Staff named as the accused in this Complaint is now a *Zone of Danger* for Plaintiff, under the exception, where he was in danger of the violation of his rights by the Officials there.

**34.** Irreversible loss of CPS placement does great harm to Plaintiff, because he cannot be discharged from civil commitment without CPS placement, but he cannot go back there. Not only because Sexe has single handedly discharged him from CPS for no reason, but because it is a *Zone of Danger* for Plaintiff, based on the allegations raised in this Complaint against Sexe and her Staff.

**35.** Irreversible fear and intimidation to the extent the thought of returning to CPS and more abuses by Sexe and her Staff (without a TRO enjoining them to cease it) is accompanied by great unnerving distress and anxiety, fear and intimidation for Plaintiff and he does not feel safe going

back there, and cannot. It will be injurious to his health at 63 years old to be back in that *zone of danger.*

**36.** Irreversible loss of eleven years (from December 2008, to November 2019) to earn the reduction in custody and transfer to the unsecured CPS has been unlawfully taken by Sexe; turned into "dead time."

**37.** Irreversible loss of six years at CPS, is turned into nothing more than time languished at CPS for the past six years. "Dead time" is all it amounts to, after Sexe's adverse retaliatory actions on June 16, 2025;

**38.** Irreversible loss harms to Plaintiff has been subjected to exactly the threat Sexe made as filed in that Complaint. Immediately when Sexe became Director of CPS. No other misconduct by Plaintiff exists, or was ever stated on June 25, 2025, by Sexe or Tallefson at about 10:00 AM when they tried to bully and intimidate Plaintiff stating quote: *"If you do not sign a volunteer return to the secured perimeter for sixty days, you will be revoked and then you won't be able to come back to CPS,"* but there was no "misconduct" stated on Plaintiff's part that justified returning him to a maximum security facility and maximum conditions of confinement for indefinite time --- life!

## CLAIMS

**39.**   That Defendant Sexe and Tallefson violated the First Amendment of the United States Constitution by locking Plaintiffs into the secured facility on May 17, 2025, when she did it to retaliate (in part) for engaging his Fifth Amendment rights to freedom from Self-incrimination, would not exist "but for" engaging that constitutional right;

**40.**   That Sexe and Tallefson violated the First Amendment of the United States Constitution by creating a zone of danger for Plaintiffs based on the harms they done to Plaintiffs by locking him into the secured facility for engaging his First Amendment rights to Freedom of Speech and Freedom of Association, when he chose to remain silent, and safe from a madman;

**41.**   That Sexe and Tallefson violated the United States Constitution by arbitrary and capricious agency actions when they locked Plaintiffs inside the secured facility --- was an abuse of power in violation of the Fourteenth Amendment of the United States (supra).

**42.** That DHS violated the First and Fourteenth Amendments of the United States by implementing or allowing Sexe to implement agency policy in violation of Plaintiff's statutory rights to "refuse treatment," and then acting on that policy to lock Plaintiffs up in the maximum security facility for engaging his Fifth Amendment rights that their policy conflicted with was an abuse of power in violation of the United States Constitution, and clearly established State and Constitutional laws.

**43.** That DHS violated Section §1981 by taking part in the subordinates' unconstitutional actions when DHS was informed of Sexe's actions and revocation orders against Plaintiff Dorn and did nothing to prevent it from causing the harms it was certainly going to do by being in the secured facility for engaging his fifth-amendment rights, until coerced under duress and max security confinement and lied to, when he was encourage to trust Sexe and Tallefson, they reneged on their action and promises to return to CPS for being forthcoming. That is a breach of contract, for which injunctive and declarative relief is sought by Dorn (supra). He was hoodwinked, bamboozled, lied to by Sexe and Tallefson, tricked, but never read his rights. So, anything he said, or any Plaintiff said, without being

read his rights is excluded even from a revocation hearing. Unlawful and void!

**44.** That DHS violated Fifth Amendment rights of the Plaintiffs by tacitly approved it all by remaining indifferent, when did nothing to intervene, even after being put on notice by this receiving lock up and revocation notices from Se3xe.

**45.** That Sexe and Tallefson violated the Fourteenth Amendment of the United States Constitution, but by applying Eighth Amendment rights for civilly committed Plaintiffs by subjecting him to cruel and unusual punishment when they took him from unsecured setting to the maximum security conditions and environment of MSOP for no stated misconduct, or any misconduct at all, and never read him his rights to remain silent. Did nothing but lie.

## RELIEF REQUESTED
## IMMEDIATE TRO INJUNCTIVE RELIEF:

**46.** In the *Interest of Justice,* and good faith, for the given reasons stated above, Plaintiffs demand Injunctive Relief in the form of immediate TRO, enjoining Sexe, Tallefson, and DHS as follows:

**47. (1)** Enjoining Defendants DHS to immediately void Sexe and Tallefson's adverse actions / revocation orders, discharging Plaintiffs from CPS and placing any of them in the maximum security facility, or to show cause for that custody increase and transfer to maximum security facilities of MSOP within two (2) days of the date of this Order. The stated reasons will not allege: (i) Treatment participation at CPS; **(ii)** Engaging his First Amendment to Freedom of Speech or Association in any way; Fifth Amendment rights of Freedom From Self-incrimination; and must give proof of having read each Plaintiff his rights to remain silent, before questioning him at any time from May 17, 2025, to this day. The Court will not Order "transfers" per se, but the revocation and order for maximum security placement will be ruled unconstitutional in light of the Defendant's failure to respond in two (2) days as Ordered above.

48.   (2) Enjoining Defendants Sexe and Tallefson to immediately cease and desist any further harassment of any Plaintiff for one year upon return to CPS, or until this case is tried and a decision is made by the jury to preserve the status quo for the next year;

49.   (3) Enjoining Defendant DHS to ensure no further harassment of Plaintiffs by Sexe or Tallefson, to the penalty of arrest and charged for TRO violation.

## EXEMPLARY RELIEF:

50.   Plaintiff seeks Exemplary Damages later.

## COMPENSATORY DAMAGES

51.   Compensatory Relief by an Award of $1,500.000 each if the jury determines that the discharge from CPS by Sexe (the only one with authority to order it that day) was related in part to Plaintiff's engaging any First or Fifth Amendment rights of the United States Constitution.

52.   Court costs and attorney fees;

53.   Such other additional relief the Court or jury deems appropriate.

In the interest of justice,

Date: _____    Signed: _____
                                         Chris Jackson

Date: _____    Signed: _____
                                         Tim Dorn

Date: _____    Signed: _____
                                         Mathias Mayers

Date: _____    Signed: _____
                                         Tim Mohawk

## VERIFIED COMPLAINT

*See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994–95 (8th Cir. 2001). "[A] complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint " *Id.* As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts{2024 U.S. Dist. LEXIS 8} alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id.* The Court will, therefore, "piece[] together [Plaintiff's] version of the facts from the verified complaint " *McClanahan v. Young*, No. 4:13-cv-04140, 2016 U.S. Dist. LEXIS 13978, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016).

Date: _____    Signed: _____
                                         Chris Jackson

Date: _____    Signed: _____
                                         Tim Dorn

Date: 6-18-25      Signed: _Mathias Mayers_
                                Mathias Mayers

Date: 6-18-25      Signed: _Timothy P. Mohawk_
                                Tim Mohawk